

FILED
5/25/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 35 |
| v. | Judge Elaine E. Bucklo |
| WILMER ALEXANDER GARCIA MEZA, aka "Alejandro Garcia" and "Alex Garcia," | |
| Defendant. | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States of America, by and through its attorney, DAVID A. HUBBERT, Acting Assistant Attorney General for the Tax Division, Department of Justice (hereinafter, the "Tax Division"), and defendant, WILMER ALEXANDER GARCIA MEZA, by and through his attorney, STEVEN GREENBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The indictment in this case charges defendant with four counts of mail fraud in violation of Title 18, United States Code, Section 1343 (Counts 1-4); two counts of aggravated identity theft in violation of Title 18, United States Code, Section 1028A (Counts 5-6); and fourteen counts of submitting a false claim, in violation of Title 18, United States Code, Section 287 (Counts 7-20).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with mail fraud in violation of Title 18, United States Code, Section 1343; and Count Five, which charges defendant with aggravated identity theft in violation of Title 18, United States Code, Section 1028A.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Five of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.     With respect to Count One of the indictment:

Beginning no later than in or about January 2013 and continuing through at least in or about July 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant WILMER ALEXANDER GARCIA MEZA, aka "Alejandro Garcia" and "Alex Garcia," devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the IRS by means of materially

2

false and fraudulent representations, in violation of Title 18, United States Code, Section 1341.

As part of defendant's scheme to defraud, defendant obtained without authorization personal identifying information ("PII") of various individuals whom he knew to be real persons, including their names, dates of birth, and identification documents, such as foreign passports or driver's licenses, and used that information to prepare and mail Forms W-7, Applications for IRS Individual Taxpayer Identification Number ("ITINs"), to the IRS to apply for ITINs in their names.

As further part of defendant's scheme to defraud, defendant used computer software that he purchased to create false Forms W-2, Wage and Tax Statements, reporting false wage income and amounts of federal income tax withheld from certain individuals' paychecks. Defendant also used computer software that he purchased to prepare fraudulent Forms 1040A, U.S. Individual Income Tax Returns, and fraudulent Forms 1040EZ, Income Tax Return for Single and Joint Filers with No Dependents, in his name and in the names of other individuals.

As further part of defendant's scheme to defraud, from no later than in or about January 2013 to at least in or about July 2017, defendant prepared and filed with the IRS materially false and fraudulent individual income tax returns for tax years 2011 to 2016, in his name and in the names of others, using individuals' PII without their knowledge or consent. These false and fraudulent tax returns claimed that the individuals had earned a certain amount of wage income and had a certain amount

3

of federal income tax withheld from their paychecks when in fact the defendant knew the individuals did not earn the reported amount of wage income and did not have the reported amount of federal income tax withheld from their paychecks. In total, defendant prepared and filed no less than 77 false and fraudulent tax returns claiming fraudulent refunds in a total amount of no less than $328,582. Of the $328,582 claimed, $221,923 was paid by the United States government in the form of United States Department of the Treasury ("U.S. Treasury") tax refund checks ("Treasury checks") and direct deposits into bank accounts to which defendant had access and which were located in the Northern District of Illinois.

As further part of defendant's scheme to defraud, defendant directed the U.S. Treasury to send anticipated tax refunds, in the form of Treasury checks by mail to United States Post Office Boxes and to other mailing addresses to which defendant had access. Defendant then cashed and caused others to cash the Treasury checks he received, which he knew were fraudulent federal income tax refunds, at small grocery stores or currency exchanges located in the Northern District of Illinois, Eastern Division, and elsewhere. In some instances, defendant also directed the United States Department of the Treasury to deposit anticipated tax refunds into bank accounts to which defendant had access and which were located in the Northern District of Illinois.

As further part of defendant's scheme to defraud, on or about January 22, 2015, in the Northern District of Illinois, Eastern Division, defendant, for the purpose of

4

executing the previously-described scheme to defraud, knowingly caused to be delivered by mail, via the United States Postal Service, according to the direction thereon, an envelope addressed to "DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE CENTER, FRESNO, CA 93888-0015," which was postmarked in Carol Stream, Illinois, and which contained a false 2012 Form 1040EZ that claimed a fictitious, false and fraudulent refund in the amount of $2,519, in the name of an individual with the initials, "D.Y.V.A," and that listed the taxpayer's return address as "P.O BOX 681431 SCHAUMBURG IL 60168," which is a United States Post Office Box that defendant opened in his own name. This tax return was false and fraudulent as to material matters, in that defendant claimed on that return: (a) on line 1, that an individual with the initials "D.Y.V.A." earned $20,300 in wages, salaries, and tips income in 2012; and (b) on line 7, that an individual with the initials "D.Y.V.A." had $3,670 in federal income tax withheld from her Form(s) W-2 and 1099 in 2012. At the time defendant claimed these false items on the return, defendant knew the information to be false. Defendant's fingerprints were found on the above described 2012 Form 1040EZ and the attached Form W-2 bearing the name of an individual with the initials "D.Y.V.A."

b.     With respect to Count Five of the indictment:

On or about January 22, 2015, within the Northern District of Illinois, Eastern Division, and elsewhere, defendant WILMER ALEXANDER GARCIA MEZA, aka "Alejandro Garcia" and "Alex Garcia," did knowingly use, without lawful authority

and without that individual's consent, the name of an actual person with initials "D.Y.V.A.," to commit mail fraud, as described above, in violation of Title 18, United States Code, Section 1341.

Specifically, on or about January 22, 2015, defendant used D.Y.V.A.'s name, knowing that D.Y.V.A. was a real person and without D.Y.V.A.'s knowledge or consent, to prepare a false and fraudulent 2012 Form 1040EZ in the name of D.Y.V.A. On or around January 22, 2015, in the Northern District of Illinois, Eastern Division, defendant, for the purpose of executing the previously-described mail fraud scheme, knowingly caused to be delivered D.Y.V.A.'s false and fraudulent 2012 Form 1040EZ by mail, via the United States Postal Service, according to the direction thereon, to the IRS Service Center in Fresno, California, knowing that D.Y.V.A. was a real person and that her name had been used without her knowledge or authorization. D.Y.V.A.'s 2012 Form 1040EZ was false and fraudulent as to material matters, as described above with respect to Count One, and defendant knew that such information was false at the time he caused it to be mailed to the IRS. The 2012 Form 1040EZ directed the U.S. Treasury to send the claimed refund to a United States Post Office Box in defendant's name. The U.S. Treasury did in fact send the claimed refund in the form of a Treasury check to the above described United States Post Office Box.

//// 

6

## Maximum Statutory Penalties

7.  Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.  Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.  Count Five carries a statutory mandatory sentence of 2 years' imprisonment. The sentence of imprisonment on Count Five is required to be consecutive to any other sentence imposed on Count One. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Five also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Five, the judge also may impose a term of supervised release of not more than 1 year.

c.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.  Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.     Therefore, under the two counts to which defendant is pleading guilty, the total statutory maximum sentence is 22 years' imprisonment, and the statutory minimum sentence is 2 years' imprisonment. In addition, defendant is subject to a total statutory maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release of not more than 3 years, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

i. For defendant's conviction of mail fraud (Count One), the base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. Pursuant to Guideline § 2B1.1(b)(1)(G), the offense level is increased by 12 levels because the intended loss of the mail fraud scheme is $328,582, which is more than $250,000 but less than $550,000.

iii. The total offense level for Count One is 19.

iv. Pursuant to Guideline § 5G1.2, the sentence of 24 months' imprisonment for Count Five will run consecutive to any other sentence imposed by the Court.

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of

9

Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   vi.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   vii.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

   c.  **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 16, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 21 to 27 months' imprisonment, for defendant's conviction of mail fraud (Count One). For defendant's conviction of aggravated identity theft (Count Five), an additional statutory

10

mandatory sentence of 24 months' imprisonment will be imposed, to run consecutive to any other sentence imposed by the Court, in addition to any supervised release, fine, and restitution the Court may impose. Defendant acknowledges that he is subject to a statutory minimum sentence of 2 years' imprisonment.

d.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the applicable advisory guidelines range as well as other facts and law relevant to sentencing. Defendant understands that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable

11

provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.  Each party is free to recommend whatever sentence it deems appropriate.

12.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.  Regarding restitution, defendant acknowledges that he is required to pay restitution to the U.S. Treasury, arising from the conduct set forth above, totaling $221,923, pursuant to Title 18, United States Code, Section 3663A.

14.  Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and

the Tax Division or United States Attorney's Office for the Northern District of Illinois, of any material change in economic circumstances that might affect his ability to pay restitution.

15. The parties understand that defendant will receive proper credit, consistent with paragraph 14 above, for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from defendant for the time period covered by this agreement or any other time period.

16. Defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period(s) covered by this agreement or any other time period.

17. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.     Defendant agrees to send all payments made pursuant to the court's

restitution order to the Clerk of the Court at the following address:

> Clerk of the Court
> U.S. District Court for the Northern District of Illinois
> Dirksen U.S. Courthouse
> 219 S. Dearborn Street
> Chicago, IL 60604

20.     With each payment to the Clerk of the Court made pursuant to the

District Court's restitution order, defendant will provide the following information:

> A.     Defendant's name and Social Security number;
> B.     The District Court and the docket number assigned to this case;
> C.     Tax year(s) or period(s) for which restitution has been ordered; and
> D.     A statement that the payment is being submitted pursuant to the District Court's restitution order.

21.     Defendant agrees to include a request that the Clerk of the Court send

the above information, along with defendant's payments, to the IRS address below:

> IRS - RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

22.     Defendant also agrees to send a notice of any payments made pursuant

to this agreement, including the information listed in the previous two paragraphs,

to the IRS at the following address:

> IRS - RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

23.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 35.

25.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the Tax Division and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

26.     Defendant understands that nothing in this Agreement shall limit the IRS in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

27.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

     v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

     vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

     vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

     b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

28.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Collateral Consequences of Conviction

29. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The district court cannot advise defendant fully regarding the immigration consequences of the felony conviction in this case, but defendant's attorney has advised her about the deportation risks of her guilty plea. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea. Defendant understands that neither the Tax Division nor the United States Attorney's Office for the Northern District of Illinois has made any promises pertaining to any potential immigration consequences of the felony conviction in this case.

## Presentence Investigation Report/Post-Sentence Supervision

30. Defendant understands that the Tax Division, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The

government will make known all matters in aggravation and mitigation relevant to sentencing.

31.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the Tax Division, regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

32.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant=s request to the IRS to

disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

33.     Defendant agrees to cooperate with the Tax Division and United States Attorney's Office for the Northern District of Illinois in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the Tax Division or United States Attorney's Office for the Northern District of Illinois.

## Conclusion

34.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

20

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

37.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

/ / / /

21

AGREED THIS DATE: _4/19/2022_

_____
DAVID A. HUBBERT
Acting Assistant Attorney General
Department of Justice, Tax Division

_____
THOMAS W. FLYNN
MICHAEL C. LANDMAN
Trial Attorneys
Department of Justice, Tax Division

Wilmer Alexander Garciameza
_____
WILMER ALEXANDER GARCIA MEZA
Defendant

_____
STEVEN GREENBERG
Attorney for Defendant