IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 CR 35 |
| | ) | |
| WILMER ALEXANDER GARCIA MEZA, | ) | Hon. Judge Bucklo |
| | ) | *Presiding* |
| Defendant. | ) | |

### DEFENDANT GARCIA MEZA'S SENTENCING MEMO

Under Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553(a), as well as the Sixth Amendment of the United States Constitution and the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005), Defendant, WILMER ALEXANDER GARCIA MEZA, ("Wilmer") respectfully requests a sentence of two years and one day, followed by a term of supervised release. Such a sentence will be sufficient but not greater than necessary to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a)(2). It will likewise reflect the limitations of 18 U.S.C. § 3582(a):

> The court, in determining whether to impose a term of imprisonment… [shall recognize] that imprisonment is not an appropriate means of promoting correction and rehabilitation.

The man who steps before this Court differs from many. He is a man of fundamentally decent character, with an incredible work ethic. He is kind-hearted, talented, and caring. He poses no risk of reoffending.

Wilmer is genuinely remorseful.

1

I. **THE STATUTORY FACTORS**

Section 3553(a) obligates this Court to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing set forth by Congress. 18 U.S.C. § 3553(a)(2). Congress does not require a custodial sentence for this offense.

To fashion a sentence that complies, 18 U.S.C. § 3553(a) directs this Court to consider these factors:

- The nature and circumstances of the offense, as well as the history and characteristics of the defendant (§3553 (a)(1));

- The need for the sentence to (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (§3553(a)(2);

- The kinds of sentences available (§3553 (a)(3));

- The sentencing guideline range (§3553 (a)(4));

- Any Sentencing Commission policy statements (§3553 (a)(5));

- The need to avoid unwarranted sentencing disparities among defendants with similar records who engaged in similar conduct; (§3553 (a)(6)); and

- The need to provide restitution. (§3553 (a)(7)).

The guidelines are only one of many factors the Court must consider when imposing a sentence. *See United States v. Booker*, 543 U.S. 220, 259 (2005). They carry no greater weight than any other factor. The Seventh Circuit has recognized that the sentencing judge "cannot treat all sentences that would fall within the guidelines sentencing range as reasonable *per se*." *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005). The §3553 factors, "are broad, vague, and open-ended," leaving the sentencing judge with "considerable discretion to individualize the sentence to the offense and offender as long as

the judge's reasoning is consistent with § 3553(a)." *United States v. Wachowiak,* 496 F.3d 744, 748 (7th Cir.2007); *abrogated on other grounds by Nelson v. United States*, 555 U.S. 350, 129 S.Ct. 890, 172 L.Ed.2d 719 (2009). While the guidelines remain a factor, this Court ought not presume that they will produce the "correct" sentence. *See United States v. Demarree*, 459 F.3d 791, 794-95 (7th Cir. 2006). Accordingly, this Court should impose a sentence below the advisory guideline range when that sentence is required under the § 3553 factors, as in the case here.

*United States v. Warner*, 792 F.3d 847 (7th Cir. 2015), is instructive. Defendant had pleaded guilty to willful tax evasion for failing to disclose an offshore bank account containing over $107 million, yielding a guidelines ranger of 46-57 months. *Id.* At sentencing, defendant showed a long history of charitable works, a wave of support from colleagues and friends, and that he had paid the full restitution amount. *Id.* Despite the seriousness of the offense, the trial court found that the defendant was "very unique," and sentenced him to probation rather than incarceration. *Id.* at 854. The Seventh Circuit affirmed the non-prison sentence, reasoning that "while incarcerating [the defendant] undoubtedly would have sent a *stronger* message, the message sent by his existing sentence is, in our view, strong enough to satisfy §3553(a)(2)(B)." *Id.* The court acknowledged the general proposition that effective deterrence requires a credible threat of imprisonment, yet it maintained that such general deterrence "does not necessitate imprisonment in every case." *Id.* at 861.

A.  **SECTION 3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Section 3553(a)(1) encourages that the offending conduct be considered alongside the detailed history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). One must view the defendant's role in the offense and try to understand them as a person, evaluating their criminal conduct *vis-à-vis* how they have otherwise lived their life. The key is balancing, to determine "just punishment."

Wilmer is 31 years old, and was born in Juticalpa, Honduras, on November 30, 1990. (PSR, pg. 3) He spent his early life with his maternal grandparents, Nicholas and Maria Garcia, in Honduras. (PSR, pg. 10) His mother, Sonia Garcia, had left him with his grandparents when he was three years old, after she immigrated to the United States to find employment. (Id.) Sonia provided Wilmer with financial support from afar. (Id.) His grandparents were caring individuals, who provided Wilmer with food, shelter, clothing, support, and encouragement. (Id.)

At 11 years old, Wilmer moved to the North Carolina to live with his mother, his stepfather, Francisco Veliz, and his half-sister, Katherine. (Id.) Wilmer's stepfather was an abusive alcoholic. (Id.) He would often lock Wilmer out of the house. (Id.) Wilmer's mother did not defend or support him, was often away at work, and would tell him to "be quite." (Id.) Wilmer recalled running away from home when he was 14 years old because his stepfather tried to kill him with a machete. (Id.) He lived with a friend for six months after this incident. (Id.) He would return, but in 2010 at 19 years old he left home and moved to Chicago. (Id.) Wilmer rarely communicates with his mother and half-sister, who both now

4

live together in Waukegan. (Id.) However, both are aware of Wilmer's involvement in the instant offense and are supportive of him. (Id.)

In 2016 he married his wife, Daisy Cortes. Daisy is 29 years old. (PSR, pg. 11) Daisy works for the Transportation Security Administration (TSA) at O'Hare International Airport. (Id.) While Daisy is in overall good health, she recently injured her knee at work and despite having participated in physical therapy, will have to undergo knee surgery. (Id.)

They have a five-year-old son, Leonardo Garcia. (Id.) Leonardo is in good health and will be beginning kindergarten in the fall of 2022. (Id.) He is not aware of his father's involvement in the instant offense. (Id.) Wilmer, Daisy and Leonardo live together in a single-family home located in Waukegan, Illinois. Daisy owns the home. (Id.) Both Daisy and Leonardo are native-born citizens. (Id.)

Wilmer is not in a gang, has no history of street gang membership, and does not own or possess a firearm. (PSR, pg. 11) He is in good physical health. (PSR, pgs. 11-12) Although Wilmer feels "stressed" and "worried" about the outcome of the instant case, he has not been diagnosed with any mental or emotional health problems and he is not taking any medications. (PSR, pg. 12) He has no history of alcohol or substance abuse problems, and rarely consumes alcohol. (Id.) Wilmer tried marijuana when he was 18 but has not used any since that time. (Id.) His June 14, 2022, urinalysis was negative for any illicit substances. (Id.)

Wilmer dropped out of the ninth grade to work and to provide his mother assistance after his stepfather was arrested by immigration authorities. (Id.) He is currently enrolled in diploma courses through the College of Lake County and is working toward obtaining his GED. (PSR, pg. 13)

5

A certified forklift operator, he works at Handi-foil in Antioch, Illinois, full-time, earning $17 per hour. (Id.) He often works a second job, and most recently worked weekends at Abbott Labs in Gurnee, earning $25 per hour. (Id.) Wilmer's work history shows that he has been consistently employed throughout his adult life, often working more than one job. (PSR, pgs. 13-15)

Wilmer is not a citizen of the United States; his immigration status is that of illegal alien. (PSR, pg. 3) He has serious and valid concerns about having to return to his country of origin, Honduras. He is concerned that he might be killed if he returns there. Individuals who were charged on related matters and deported to Honduras have threatened Wilmer by saying that if he returned there, he will be killed. These individuals have contacted Wilmer's relatives who live in Honduras and made these threats. Wilmer's relatives have forwarded these concerns to the Honduras police.

Wilmer is sincerely remorseful. This Court is familiar with lifelong criminals coming forward at sentencing and asking for a third, fourth, maybe even a fifth chance. Here, Wilmer is asking for a second chance. The sentencing goals would best be accomplished through the requested sentence.

**B.     3553(a)(2): THE GOALS OF SENTENCING**

Section 3553(a)(2) speaks to the need for the sentence imposed to provide just punishment, to reflect the seriousness of the offense, and to promote respect for the law; to provide adequate deterrence; to protect the public; and to provide the defendant with needed medical care, vocational and educational training, or other correctional treatment. U.S.S.G § 3553; *see also United States v. Norton*, 218 F. Supp. 2d 1014, 1016 (E.D. Wis. 2002) ("If the nature of the offense and the character of the defendant tend to show that no end other

6

than punishment will be served by imprisonment, if there is no threat to the community, and if society will ultimately benefit by allowing the defendant to care for his or her family, a departure is warranted."); *United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015) ("§ 3553(a) does not command courts to send the strongest message possible; it commands them to impose a sentence that is 'sufficient, *but not greater than necessary'* in the circumstances of each case.") *(emphasis in original)*.

To begin, a prison sentence is unnecessary to deter Wilmer from committing future crimes. He is not going to recidivate. He has led a law-abiding life since this. He has cooperated. He is not a danger to the public. He is not a violent person and never has been. Wilmer does not need medical care, vocational and educational training, or other correctional treatment. He is a wonderful person who made a terrible mistake. He immediately accepted responsibility for his actions. He owned his wrongdoing.

Any message that needed to be sent for general deterrence was sent through his arrest. Given there is no need for specific deterrence, and general deterrence has already been addressed, a prison sentence, beyond the mandatory minimum, is not needed.

**C.    3553(a)(4): THE SENTENCING GUIDELINE RANGE**

The first step in sentencing a defendant is to correctly calculate the applicable guideline range. *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 169 L.Ed. 2d 445 (2007); *United States v. Vrdolyak*, 593 F.3d 676, 678 (7th Cir. 2010). After doing so, the court has a right to disagree with the results of the guideline calculation and even categorically reject the Sentencing Commission's policy choices. *Spears v. United States*, 555 U.S. 261, 129 S. Ct. 840, 843-44, 172 L.Ed. 2d 596 (2009); *United States v. Aguilar-*

7

*Huerta*, 576 F.3d 365, 446-67 (7th Cir.), cert. denied, 130 S. Ct. 811, 175 L.Ed. 2d 596 (2009).

Wilmer does not object to the guideline range in this case. It is largely influenced by the dollar amount, not the actual conduct. The base offense level is 7 (0-6 months).

### D. 3553(a)(5): THE KINDS OF SENTENCES AVAILABLE

District courts are to fashion a sentence sufficient but not greater than necessary to achieve the sentencing goals. *See* 18 U.S.C. § 3553(a); *See also Spears v. United States*, 555 U.S. 261 (2009). As charged, Wilmer is not eligible for probation, since there is a mandatory minimum. That minimum would be appropriate for a first-time, non-violent offender, who quickly accepted responsibility and extensively cooperated with law enforcement, with no criminal record. Thus, the purposes of sentencing can be achieved through the requested sentence, followed by a rigorous term of supervised release.

Wilmer does not object to any of the proposed conditions of release.

### E. 3553(a)(6): THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES.

Section 3553(a)(6) requires that the Court consider "the need to avoid unwarranted sentencing disparities among defendants with similar records that have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This is not an issue in this case.

F.  CONCLUSION

At the end of the day Wilmer understands that he committed a serious felony offense. Even so, the only sentence that is not greater than necessary is a sentence that does not include any more than the minimum Bureau of Prisons custodial sentence.

/s/ *Steven Greenberg*

**Steven A. Greenberg**
**GREENBERG TRIAL LAWYERS**
**Chicago, Illinois 60604**
**53 W. Jackson Blvd., Suite 1260**
**(312) 879-9500**
**Steve@GreenbergCD.com**