David A. Hubbert, Deputy Assistant Attorney General, Tax Division
Jacob M. Green, Trial Attorney, Tax Division
Thomas W. Flynn, Trial Attorney, Tax Division
Attorneys for United States of America
150 M St. NE
Washington, D.C. 20002
Telephone: (202) 514-4312
Email: Jacob.m.green@usdoj.gov

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Wilmer Alexander Garcia Meza,<br><br>　　　　Defendant. | Case No. 1:20-cr-00035-1<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:　　　August 17, 2022<br>Time:　　　10:30 a.m.<br><br>**THE HON. ELAINE E. BUCKLO** |

　　　The UNITED STATES OF AMERICA, by and through its counsel, David A. Hubbert, Deputy Assistant Attorney General, Tax Division, and Jacob M. Green and Thomas W. Flynn, Trial Attorneys, Tax Division, hereby files this Sentencing Memorandum regarding Defendant Wilmer Alexander Garcia Meza, which is supported by the Indictment, Plea Agreement, and Presentence Investigation Report ("PSR")[1], ECF Nos. 1, 75, and 76. As detailed more fully below, a sentence of 45 months of imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing enumerated in 18 U.S.C. § 3553(a). A 45-month sentence incorporates the lowest sentence within the Guidelines Range for the Mail Fraud offense and the additional statutorily required 24-month sentence for the Aggravated Identity Theft offense. The United States also recommends that the Court impose three years of supervised release and restitution in the

---

[1] The United States has no objection to the PSR.

amount of $221,923. The U.S. Probation Office recommends the very same prison sentence. ECF No. 76, Sentencing Recommendation.

## I. PROCEDURAL HISTORY

On January 16, 2020, Wilmer Alexander Garcia Meza ("Garcia" or "defendant"), was charged in a twenty count Indictment. Count One through Four alleged that defendant violated 18 U.S.C. § 1341 (Mail Fraud) by obtaining personal identifying information ("PII") of various individuals, obtaining Individual Taxpayer Identification Numbers ("ITINs")[2] for those individuals by submitting Forms W-7 to the Internal Revenue Service ("IRS"), using computer software to create false Forms W-2, Forms 1040A, and Forms 1040EZ, using ITINs to file false income tax returns with the IRS claiming refunds, causing fraudulently obtained United States Department of the Treasury tax refund checks ("refund checks") to be mailed to U.S. Post Office Boxes ("P.O. Boxes") defendant controlled, and cashing the refund checks using other individuals' identification documents. Indictment, ECF No. 1 ¶¶ 3-12. Count Five and Six alleged that defendant violated 18 U.S.C. § 1028A (Aggravated Identity Theft) by using identification documents of actual people to commit mail fraud. *Id*. ¶¶ 21-24. Count Seven though Twenty alleged that defendant violated 18 U.S.C. § 287 (False Claim) by filing false income tax returns with the IRS claiming fraudulent refunds. *Id*. ¶¶ 25-26. On May 25, 2022, defendant pleaded guilty to Count One (Mail Fraud), with an agreed upon intended loss of $328,582 and actual loss of $221,923, and Count Five (Aggravated Identity Theft). On July 12, 022, the U.S. Probation Office filed a PSR recommending a sentence of 45 months. The U.S. Probation Office does not recommend a downward departure because "this is a serious offense and involved repeated conduct over several years." ECF No. 76, Sentencing Recommendation, Pg. 2.

## II. Statement of Facts

---

[2] An ITIN is a tax processing number issued by the IRS to individuals who do not have, and are not eligible to obtain, a social security number.

2

The Plea Agreement and PSR provide the relevant facts. ECF Nos. 75 and 76. In short, from 2013 through 2017, Garcia used PII of third parties—including their names, dates of birth, and identification documents such as foreign passports—to fraudulently obtain ITINs from the IRS. To accomplish his scheme, Garcia purchased computer software and laser paper to create fictitious Forms W-2 and Intuit Turbo Tax software to prepare false tax returns. Garcia then used these ITINs to file fraudulent tax returns in the names of the third parties to claim thousands of dollars in fraudulent refunds. Garcia also used the identification documents to cash the fraudulently obtained refund checks. In total, Garcia prepared and filed no less than 77 false tax returns claiming fraudulent refunds in a total amount of no less than $328,582. Of the $328,582 claimed, $221,923 was paid by the United States government in the form of refund checks and direct deposits into bank accounts to which Garcia had access. The false tax returns were linked to Garcia based on fingerprint evidence.[3] Garcia also maintained control of at least ten P.O. Boxes, which he either opened personally or directed others to open, in order to receive the false refund checks. In addition, Garcia cashed the majority of the refund checks at a small family-owned grocery store in Mundelein, Illinois.

The identity theft victims in this case have been referred to in public documents as "D.Y.V.A." and "R.L.M.C." D.Y.V.A. is a lawful permanent resident living in Charlotte, North Carolina. She immigrated to the United States from Honduras in 2005. She has never met Garcia nor been to the State of Illinois. She has regularly filed her own tax returns using her Social Security number. Garcia used D.Y.V.A.'s PII to obtain an ITIN in her name and then used that ITIN to file a false 2012 individual income tax return claiming a refund of $2,519. As a result, the U.S. Treasury sent a refund check for that amount to a P.O. Box controlled by Garcia. R.L.M.C. lives in Bremen, Indiana. He is a Honduran citizen and traveled to the United States in 2012 with a valid U.S. Visa. He has never met Garcia. Garcia used R.L.M.C.'s PII to obtain an ITIN in his name and then used

---

[3] IRS Forensic Examiners determined that Garcia's fingerprints were "conclusively present" on twenty-three false tax returns.

3

that ITIN to file a false 2014 individual income tax return claiming a refund of $4,222. As a result, the U.S. Treasury sent a refund check for that amount to a P.O. Box controlled by Garcia.

## III. SENTENCING RECOMMENDATION

### A. Advisory Guideline Calculations

The United States agrees with the U.S. Probation Office's calculations. With respect to Count One, defendant's criminal conduct had an intended tax loss, including relevant conduct, of $328,582, which corresponds to Adjusted Offense Level 19. USSG §§ 2B1.1(a)(1) and (b)(1)(G). Defendant has accepted responsibility under USSG § 3E1.1(a), reducing the offense level by two levels. Assuming defendant continues to accept responsibility, the United States will move for an additional reduction of one level under § 3E1.1(b) for timely notification, resulting in a Total Offense Level of 16. The U.S. Probation Office determined that defendant has no criminal history points and is in Criminal History Category I. Defendant's Guideline range for Count One is therefore 21 to 27 months of imprisonment. Defendant's sentence for Count One addresses defendant's criminal conduct in stealing hundreds of thousands of dollars from the federal government. For Count Five, an additional statutory mandatory sentence of 24 months of imprisonment will run consecutive to any other sentence imposed by the Court for the Mail Fraud conviction, ECF No. 75 ¶ 9(c); 18 U.S.C. §1028A. The statutorily mandated sentence addresses the defendant's separate criminal conduct of stealing and using other people's identities. In contrast, defendant's recommendation asks the Court to give the defendant essentially no imprisonment for his Mail Fraud conviction and to issue a custodial sentence only for his Aggravated Identity Theft conviction.

### B. Sentencing Factors

The United States maintains that a sentence of 21 months of imprisonment (the lowest sentence within the Guidelines Range) for defendant's Mail Fraud conviction is supported by the § 3553(a) factors. Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines;

(5) pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found guilty of similar conduct; and

(7) the need to provide restitution to victims.

See 18 U.S.C. § 3553(a).

### 1. Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Defendant's scheme lasted four years and cannot be characterized as isolated or aberrant conduct. Moreover, the scheme had a significant and detrimental impact on multiple victims. When an individual taxpayer's PII is misused to claim false tax refunds, the individual will experience burdens and delays in filing his tax returns in the future. Here, defendant misused the PII of at least two individuals and caused $221,923 of federal government money to be diverted for defendant's personal benefit. This loss to the United States Treasury cannot be considered *de minimis* and warrants a custodial sentence.

As for the defendant's history, defendant, who is currently 31 years old, was born in Honduras. He has no lawful status in the United States. The PSR also indicates defendant presently has no physical health concerns. He has limited education and has been employed since at least 2016 by various staffing agencies earning between $2,000 and $3,000 per month. ECF No. 76 ¶¶ 69-79. Defendant also reports that he is enrolled in General Education Development courses. *Id.* ¶ 66.

Since being indicted, defendant has taken responsibility for his conduct and timely pleaded guilty.

### 2. The Need for Sentence Imposed to Reflect the Seriousness of the Offense

Given the length of time that defendant engaged in his scheme and the amount of money stolen from the federal government, a sentence of 45 months is sufficient but not greater than necessary to comport with the goal of specific deterrence. Moreover, as the Seventh Circuit has noted, white collar criminals are "prime candidates for general deterrence" because they "act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity." *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (citing *United States v. Warner*, 792 F.3d 847, 860–61 (7th Cir. 2015)). Moreover, general deterrence is particularly important given defendant's long-lasting fraud scheme involving the theft of United States Treasury funds. Here, a sentence within the Guidelines for defendant's Mail Fraud conviction is necessary to deter other would-be criminals contemplating similar false claim schemes.

### 3. The Kinds of Sentences Available

Although a non-custodial sentence is available for the Mail Fraud conviction, such a sentence is not appropriate given the particulars of defendant's scheme.

### 4. The Guidelines Range

The government's requested sentence is at the lowest end of the Guidelines Range.

### 5. Pertinent Policy Statements Issued by the Sentencing Commission

With respect to defendant's tax refund fraud scheme, the Guidelines Policy Statement notes that "under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement, that in the Commission's view are 'serious.'" The Commission therefore

wrote Guidelines that provided for a period of imprisonment in such cases, concluding that "the definite prospect of prison, even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-guidelines practice where probation, not prison, was the norm." Guidelines, Ch. 1, Pt. A, §4(d). Here, the government's requested sentence is supported by this Guidelines policy statement.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

The requested minimum Guidelines sentence avoids creating any sentencing disparities among similarly situated defendants.

### 7. The Need to Provide Restitution

Both the government and defendant agree that restitution in the amount of $221,923 is appropriate.

## C. Defendant's reliance on *United States v. Warner* is Misplaced and Unpersuasive

Defendant Warner pleaded guilty to tax evasion and paid a $53 million civil penalty. Warner evaded $5.6 million in taxes by hiding assets in a Swiss bank account. *United States v. Warner*, 792 F.3d 847, 854 (7th Cir. 2015). The District Court sentenced Warner to two years of probation with community service and a $100,000 fine. The Court of Appeals affirmed the District Court's sentence based on two important factors. First, the District Court found Warner's record of charity and benevolence "overwhelming." *Id*. at 850. Second, the government requested a sentence well below the Guidelines Range. *Id*. Here, unlike in *Warner*, defendant did not cheat on his own taxes. Rather, he simply stole hundreds of thousands of dollars from the U.S. Treasury. In addition, the government is not requesting a well below Guidelines Range sentence and is in fact requesting a sentence within the Guidelines Range. Moreover, defendant does not have an "overwhelming" record of charity and benevolence to his fellow citizens.

7

### D. Restitution

A district court has the authority to enter an order of restitution in Title 26 cases under the Victim & Witness Protection Act, 18 U.S.C. § 3663(a)(3), "to the extent agreed to by the parties in a plea agreement." This authority allows the Court to impose restitution as a separate and independent part of a sentence rather than as a special condition of probation or supervised release. *United States v. Firth*, 461 F.3d 914, 920 (7th Cir. 2006); *United States v. Anderson*, 545 F.3d 1072, 1077–78 (D.C. Cir. 2008).

In accordance with the Plea Agreement, defendant has agreed to pay restitution in the amount of $221,923. ECF No. 75 ¶ 13. The United States therefore recommends the Court enter an order of restitution for $221,923.

### E. Sentencing Recommendation

A Guidelines Range sentence is appropriate. The United States recommends a sentence of 45 months of imprisonment, three years of supervised release, and restitution in the amount of $221,923. This sentence is appropriate based on the following facts:

1. The substantial amount of intended tax loss of $328,582 and actual tax loss of $221,923
2. Defendant's multiple-year pattern of criminal conduct spanning 2013 through 2017
3. The actual victims harmed by defendant's conduct
4. The wasted taxpayer dollars and IRS resources caused by defendant's scheme.

For those reasons, the government's recommended sentence is sufficient but not greater than necessary to achieve the sentencing goals enumerated in § 3553(a).

## IV. RECOMMENDATION

Defendant's criminal conduct calls for a low-end Guidelines-range sentence. Thus, the United States recommends a sentence of 21 months of imprisonment for Mail Fraud as well as the statutorily required 24 months of imprisonment for Aggravated Identity Theft, a three-year term of supervised release, and restitution in the amount of $221,923.

Dated: August 1, 2022

    Respectfully submitted,

    David A. Hubbert
    Deputy Assistant Attorney General


    /s/ Jacob M. Green
    Jacob M. Green
    Thomas W. Flynn
    Trial Attorneys,
    U.S. Department of Justice, Tax Division